UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISIS COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-05591 |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Isis Collins ("Collins") brings this action against her former employer the Chicago Transit Authority ("CTA") for failure to accommodate her under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The CTA moves for summary judgment on both claims. For the following reasons, the Court grants the CTA's motion [118].

**Background**

As further explained below, the following facts are undisputed. From 2014 to March 22, 2019, Collins worked as a bus operator with CTA. In March 2018, Collins was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). The next month, Collins transitioned to Area 605-Temporary Medical Disability ("Area 605"), a bargained-for leave status for union employees who have been found unfit to perform the essential functions of their job due to injury or illness.

In April 2018, Collins requested an accommodation for her disability in the form of a transfer from her bus operator position to a job with office duties. Per the CTA's administrative procedures, the CTA's Accommodation Review Committee ("ARC") reviewed the request. The ARC is made up of three members, including Georgette Hampton ("Hampton"), the individual to whom Collins reported while in Area 605. After some procedural back-and-forth, Collins' doctor

submitted a letter to the ARC stating that Collins was no longer able to continue as a bus operator and would not be expected to return to that position in the future. Ultimately, the doctor recommended that Collins work in an office-based position or a role that does not require bus operations or contact with the public. In August 2018, the ARC denied Collins' accommodation request, stating it was not aware of a reasonable accommodation that would permit Collins to continue in her role as a bus operator. Further, the ARC concluded that there were no open CTA positions for which Collins qualified that would be within her medical restrictions. Collins submitted a second accommodations request in October 2018. This time, the ARC considered Plaintiff for a bus service position. The ARC again consulted Collins' doctor, who stated that Collins could fill the bus servicer role as it did not require interaction with the public.

Before the ARC resolved Collins' second accommodations request, Collins became the subject of a disciplinary investigation. On January 3, 2019, Collins called MassMutual, the third-party administrator of the CTA's retirement plan, to inquire about the status of a claim (the "MassMutual call"). She spoke with customer service representative Tim Casey ("Casey"), who informed Collins that she had not submitted sufficient documentation for her claim. In response, Collins said, "You people make me want to cut [y]our throat." (Dkt. 119-2, at 140.) After Casey's further attempts to clarify what documents Collins needed to submit, Collins stated "You got what you need to have. I sent it to you … I'm sick of entertaining you. I know where your office is. I know exactly where it is." (*Id.*, at 142.) She then said, "Now you have an option, you can give me my money or, you can take this phone call to the police and, get protection. That's all you can do." (*Id.*) After Casey repeated the documents he needed, Casey asked whether Collins would submit the information. She replied, "No motherfucker, you answer my question!" (*Id.*, at 143.) Casey terminated the call.

MassMutual reported the call to CTA's Employee Relations Manager, Robyn Thomas ("Thomas"), who investigated the incident. Thomas listened to the call and spoke with Casey's supervisors. She also attempted to interview Collins, but Collins did not initially respond to Thomas' inquiries and later called Thomas and hung up. On March 20, 2019, Thomas recommended to Hampton that Collins be discharged for violating the CTA's General Rules through her behavior during the MassMutual call and her conduct during Thomas' investigation. The CTA discharged Collins on March 22, 2019, and the ARC closed her second accommodation request on April 15, 2019.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson*, 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

Factual Disputes

Before the Court can assess the merits of the CTA's motion, it must address Collins' objections to the CTA's statement of facts. Pursuant to Local Rule 56.1, party opposing a motion for summary judgment is required to file "a concise response to the movant's statement [of facts]

3

that shall contain … a response to each numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). The Seventh Circuit routinely upholds a "district court's discretion in requiring parties to comply strictly with local rule requirements." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (citation omitted).

The Court deems admitted those facts to which Collins asserts ambiguous, irrelevant, or unsupported objections. For example, Collins objects to the CTA's recitation of its General Rules and Corrective Action Guidelines. (Dkt. 127 ¶¶ 8–9, 10–13, 14–24, 49–50, 64–68.) She does not contest the CTA's quotations of the rules, but rather their application to her. Collins seems to argue that she was not dischargeable because she was injured on duty, and points to CTA Administrative Procedure 1011 5.D – Administrative Separation to support her argument that employees injured on duty "can be administratively separated after exhausted the appropriate period of time in [Area 605]." (Dkt. 119-2, at 56.) First, the Court disregards legal arguments made in a Rule 56.1 statement of facts. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). Even so, Collins' argument falls flat. The administrative procedures do not state that employees injured on duty can *only* be discharged after a certain amount of time. And they do not immunize those employees from disciplinary action. (*See* Dkt. 119 ¶ 64.) For these reasons, the Court disregards Collins' improper and unsupported disputes to these facts and deems them admitted.

Next, Collins denies making the MassMutual call. (*See* Dkt. 127 ¶¶ 52–55.) However, Collins testified in her deposition that she made the call and confirmed the voice heard in the recording is hers. (*See* Dkt. 131.) Because this denial is in direct conflict with the record, the facts are deemed admitted. In addition, the Court deems admitted all facts to which Collins offers no citation to the record to evidence her factual dispute (Dkt. 127 ¶¶ 28, 32, 38–40, 42–43, 47, 51, 56–

4

59, 60–62, 69). *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (citing *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993)) ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.").

ADA and Rehabilitation Act Claims

Having sorted through Collins' asserted factual disagreements, the Court moves to the merits of the motion. Collins alleges that the CTA violated the ADA and the Rehabilitation Act by denying her requests for accommodation. Under the ADA, a plaintiff may make a claim for failure to accommodate by showing that "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Tarpley v. City Colleges of Chicago*, 752 F. App'x 336, 349 (7th Cir. 2018) (cleaned up). The CTA does not contest it was aware Collins had a disability; instead, it denies that Collins was a qualified individual under the ADA and that it had an obligation to accommodate her. Collins does not dispute that the Court's analysis for her Rehabilitation Act claim is identical to her ADA claim. *See Steimel v. Wernet*, 823 F.3d 902, 909 (7th Cir. 2016) (cleaned up) ("Because the relevant provisions of the Rehabilitation Act and its regulations are materially identical to their ADA counterparts, courts construe and apply them in a consistent manner.").

When Collins threatened Casey during the MassMutual call, she ceased to be a qualified individual under the ADA. The ADA "protections only 'qualified' employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one." *Palmer v. Cir. Ct. of Cook Cnty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) (citations omitted). "The Act does not require an employer to retain a potentially violent employee." *Id.* Collins' actions are almost identical to those of the plaintiff in *McRae v. Potter*, 46 F. App'x 371 (7th Cir. 2002). There, McRae, an employee with the U.S. Postal Service, sought a reasonable accommodation for a physical injury. After submitting his accommodation request, McRae threatened his coworkers and verbally

berated his superiors. The Seventh Circuit held that McRae was not a qualified employee because "[t]he Postal Service's statutory duty to reasonably accommodate McRae ended when McRae threatened his co-workers and superiors." *Id.* at 373–74 (citing *Palmer*, 117 F.3d at 352).

Collins responds that the CTA failed to properly investigate the alleged threat, and therefore her discipline was improper. Even if this argument were legally sound, the record shows that the CTA investigated the incident. The CTA's Employee Relations Manager listened to the recording of the call, spoke with representatives from MassMutual, and attempted to interview Collins for her side of the story. (Dkt. 119 ¶¶ 57–64.) Because Collins engaged in inappropriate and threatening behavior, she was not a qualified individual under the ADA and her claims must fail. *McRae*, 46 F. App'x at 373–74.

In addition, the record shows that the CTA attempted to process Collins' accommodation requests in good faith. *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016) (Under the ADA, "both the employer and employee are responsible for engaging in an 'interactive process' to find a reasonable accommodation for the employee's disability"). For Collins' first request for accommodations, the ARC worked with Collins' doctor, who stated that Collins could not hold a public-facing position due to her PTSD. Because there were no other open positions available for which Collins could qualify or that would fit within her doctor's recommendations, (Dkt. 119 ¶ 40), the ARC denied Collins' first request. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) ("An employer may be obligated to reassign a disabled employee, but only to vacant positions[.]"). The ARC also consulted with Collins' care provider for her second accommodations request, but the disciplinary investigation commenced before the ARC finished processing the request. As previously stated, the CTA was not obligated to complete the accommodations process after investigating the MassMutual call and electing to discharge Collins. *See McRae*, 46 F. App'x at 373–74. Because Collins offers no admissible evidence that she was a qualified employee under the

6

ADA or that the CTA failed to reasonably accommodate her disability, her claims cannot survive summary judgment.

**Conclusion**

For the foregoing reasons, the Court grants the CTA's motion for summary judgment.

IT IS SO ORDERED.

Date: 3/30/2032                             Entered: _____
                                            SHARON JOHNSON COLEMAN
                                            United States District Judge